UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALINA BONSELL,

                        Plaintiff,

              -against-

KATHLEEN MULDOWNEY,

                        Defendant.

25-CV-1170 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

       Plaintiff proceeds *pro se* and *in forma pauperis*. On March 10, 2025, Plaintiff filed an amended complaint (ECF 8), in which she invokes the False Claims Act (FCA), 31 U.S.C. § 3729, and asserts violations of her constitutional right to due process, under 42 U.S.C. § 1983, and violations of criminal statutes (18 U.S.C. § 1343, and New York Penal Law § 175.10), and state law (defamation, libel, professional misconduct under New York Education Law § 6509, and parental alienation under New York Domestic Relations Law § 240). The Court deems this the operative amended complaint (ECF 8).[1] For the reasons set forth below, the amended complaint is dismissed.

**STANDARD OF REVIEW**

       The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

---

[1] On March 16, 2025, less than a week after filing the operative amended complaint, Plaintiff filed a second amended complaint (SAC) (ECF 9), which is similar but includes fewer allegations and claims. A plaintiff is entitled to file one amended complaint as of right, without leave of court. *See* Fed. R. Civ. P. 15(a)(1). The Court therefore directs the Clerk of Court to strike the SAC. (ECF 9.) The Court nevertheless notes that it has reviewed the SAC, and nothing in the SAC would alter the result reached here.

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when it lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* at 678. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the operative amended complaint (ECF 8). In November 2022, the Family Court directed Plaintiff's ex-husband, Joshua Bonsell ("Joshua"), to

pay for a therapist for their child, E.B.[2] Defendant Kathleen Muldowney, a licensed clinical social worker, was engaged to provide services to E.B. At some point, Muldowney allegedly confirmed to Plaintiff that Joshua would be solely responsible for payment.

In addition to Muldowney's meetings with E.B., Plaintiff met with Muldowney on December 8 and 19, 2023. Plaintiff did not realize that Joshua had been billed for these sessions. (ECF 8 at 2.) On January 10, 2023, Muldowney informed Plaintiff that Joshua would not pay for her "follow up calls" about E.B and that Plaintiff was responsible for paying for a canceled session on January 6, 2023, due to Muldowney's cancellation policy. (*Id.*) On January 27, 2023, Muldowney billed Plaintiff for a session on January 26, 2023, and for the cancelled January 6, 2023 session, totaling $500. Muldowney "falsely" described these on the invoice as individual psychotherapy sessions for Plaintiff "rather than [sessions for] a parent receiving an update on her child." (*Id.*) Moreover, Muldowney used a billing code for "Other Recurrent Depressive Disorders," thereby "falsely implying a clinical diagnosis of Plaintiff." (*Id.*) Thereafter, Muldowney indicated that she could not meet with Plaintiff on February 28, 2023, if the invoice remained unpaid.

In May 2023, Muldowney allegedly made a false report to the New York City Administration for Children's Services (ACS) that Plaintiff was "placing E.B. at risk." (*Id.* at 3.) As a result, Plaintiff was subjected to random drug and alcohol testing, witness interviews and other "intrusive measures." (*Id.*) On July 17, 2023, ACS concluded that the allegations were "unfounded." (*Id.*)

---

[2] Because federal court filings are generally available to the public on the internet, Rule 5.2 of the Federal Rules of Civil Procedure requires that only initials be used to refer to the name of an individual known to be a minor. Here, the Court has temporarily restricted access to Plaintiff's pleadings because she uses the complete name for her minor child, as well as including what appear to be notes of therapy sessions as exhibits.

On August 22, 2024, Muldowney submitted a letter damaging to Plaintiff to the Family Court. (*Id.* at 3, ¶ 10.) Plaintiff states that, before submitting this "libelous letter," Muldowney had seen E.B. only once between May 2023 and August 21, 2024. (*Id.* at ¶ 13.) Moreover, the letter allegedly contradicts ACS findings and Muldowney's own notes.

Plaintiff contends that Defendant: (1) engaged in fraudulent billing, misrepresenting her meeting with Plaintiff as psychotherapy, in violation of the FCA and federal and state criminal law; (2) violated Plaintiff's constitutional right to due process by systematically alienating Plaintiff from her son, excluding her from significant clinical decisions regarding his therapy, and making a false report to ACS about Plaintiff; and (3) violated state law by defaming her, withholding information, and causing Plaintiff emotional distress.

Plaintiff seeks damages, criminal penalties, and injunctive relief, including termination of Defendant's license, an order removing E.B. from Defendant's care, and a formal retraction of allegedly false statements made to ACS and the Family Court.

On April 22, 2025, Plaintiff submitted a letter stating that she has filed complaints against Muldowney with the U.S. Department of Health and Human Services, Office for Civil Right and the New York State Office of Professional Discipline. (ECF 10.)

## DISCUSSION

### A.    False Claims Act claim

Plaintiff styles her claim that Defendant billed her $500 for individual therapy sessions, which Plaintiff believes should have been billed differently, as a *qui tam* action under the False Claims Act, 31 U.S.C. § 3729. An action under the FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C.

§ 3729(a).[3] Such suits may be brought by the federal government, or by a private person on behalf of the United States. 31 U.S.C. § 3730(a), (b)(1); *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009).

In federal court, private parties "may plead and conduct their own cases personally or by counsel . . ." 28 U.S.C. § 1654. Because a *qui tam* action under the FCA is brought in the name of the United States, which remains the real party in interest, a private individual cannot bring such an action *pro se*. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ("Because False Claims Act causes of action are not personal to relators, they are statutorily barred from bringing such actions *pro se*.").[4] Plaintiff therefore cannot bring an action under the FCA without counsel, and the Court therefore dismisses this claim without prejudice. If Plaintiff wishes to pursue a claim under the FCA, asserting claims involving fraud on the United States, she must bring a separate action in which she is represented by counsel.

---

[3] Although the Court does not reach the merits of Plaintiff's claim, she seems to suggest that Defendant billed her personally, not the United States, as is required for an FCA action.

[4] Other courts of appeals have similarly held that a private individual cannot bring an FCA action *pro se*. *See Downey v. United States*, 816 F. App'x 625, 627 (3d Cir. 2020) "[W]hile the False Claims Act permits relators to control the False Claims Act litigation, the claim itself belongs to the United States . . . We have held, however, that an individual proceeding *pro se* may not represent third parties in federal court."); *Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013) ("[T]o maintain a suit on behalf of the government, the relator (as the *qui tam* plaintiff is termed) has to be either licensed as a lawyer or represented by a lawyer."); *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) (per curiam) ("Those Circuits that have considered the issue have held that *pro se* relators may not prosecute *qui tam* actions. . . . Their rationale is persuasive."); *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1127 (9th Cir. 2007) (holding that, although "*pro se* plaintiffs are entitled to enforce their own independent rights in federal court under § 1654, it has no direct application here because the FCA makes clear that a relator brings a *qui tam* suit on behalf of the government").

**B.      Criminal Charges**

Plaintiff invokes federal criminal law, asserting that Defendant has engaged in wire fraud, in violation of 18 U.S.C. § 1343. She also invokes New York Penal Law § 175.10, alleging falsification of Defendant's billing records. Plaintiff cannot initiate the arrest or prosecution of an individual because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Plaintiff also cannot obtain a court order directing prosecuting attorneys to initiate a criminal proceeding against Defendant. Prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses Plaintiff's claims based on federal and state criminal law because she cannot initiate criminal proceedings against Defendant.

**C.      Due Process Claim**

Plaintiff asserts a claim, under 42 U.S.C. § 1983, for an alleged violation of her due process rights under the Fourteenth Amendment to the U.S. Constitution. A Section 1983 claim has two essential elements: "[i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of . . . federal statutory rights, or . . . constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."). A defendant acts under color of state law when the defendant exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

Plaintiff sues Defendant Muldowney, a private social worker. Private parties, however, are generally not liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). [5] Being appointed by the Family Court does not make a private social worker a state actor. *See Davis v. Whillheim*, No. 17-CV-5793 (KPF), 2019 WL 935214, at *10 (S.D.N.Y. Feb. 26, 2019) (noting that "[p]rivate social workers and counselors . . . typically do not qualify as state actors under § 1983," and finding that social worker "appointed by the court to represent the interests of Plaintiff's daughter in the Family Court visitation proceedings" was not a state actor). Private social workers are not subject to liability under Section 1983 in situations where they have "exercised their independent and professional judgment" in the interest of a child and counseled a child in their "capacity as a private provider of medical care," even when they have

---

[5] The domestic relations exception to the courts' diversity jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees," *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14-15 (2d Cir. 1990) (federal question context). Here, it is unclear what type of Family Court proceedings are at issue or whether they are ongoing. Plaintiff's claim against Defendant for making an allegedly false ACS report about her appears to be distinct from the domestic dispute, and Plaintiff seeks damages from Defendant Muldowney. *See, e.g., McKnight v. Middleton*, 699 F. Supp. 2d 507, 516 (E.D.N.Y. 2010) ("[C]laims solely seeking monetary relief will rarely invoke the domestic relations exception)," *aff'd*, 434 F. App'x 32 (2d Cir. 2011). This doctrine thus does not appear to bar the Court from considering the merits of Plaintiff's claims.

Abstention also does not appear to be warranted. *See generally Gristina v. Merchan*, 131 F.4th 82, 88 (2d Cir. 2025) (explaining that "*Younger* [abstention] generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction.") (citations omitted). Plaintiff's claims are distinguishable from those in *Falco v. Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015), where abstention was warranted because the plaintiff challenged court rules on payment for court-ordered services and defendants were the members of the judiciary who had adopted those rules. *See also Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) (dismissal under the *Younger* abstention doctrine is inappropriate where the litigant seeks money damages for an alleged violation of Section 1983).

been appointed by the Family Court *Id.* at *10 (citing *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000)).

Plaintiff's allegation that Defendant falsely reported to ACS that Plaintiff had put her child "at risk," which was later dismissed or determined to be unfounded, does not support a determination that Defendant was acting under color of state law. "With near uniformity, courts in this Circuit have [held] that reporting suspected child abuse alone does not constitute state action." *Kurtz v. Hansell*, No. 20-CV-3401 (PAE), 2021 WL 1143619, at *9 (S.D.N.Y. Mar. 24, 2021) (quotation and citation omitted); *J.C. v. Mark Country Day Sch.*, No. 03-CV-1414 (DLI), 2007 WL 201163, at *3 (E.D.N.Y. Jan. 23, 2007) ("In order to constitute state actors, [Defendants] must have served as both a reporting and enforcement mechanism for CPS."). Nor does an allegation that a defendant's report was false or mistaken change the analysis. *See*, *e.g.*, *Harrison v. New York*, 95 F. Supp. 3d 293, 324 (E.D.N.Y. 2015) ("[T]he fact that a private actor provided false or mistaken information to law enforcement does not render the supplier of information a state actor."); *Davis*, 2019 WL 935214, at *10 (holding that allegation that a social worker "provid[ed] the Family Court with allegedly defective reports" was insufficient to show state action). Plaintiff's allegation that Defendant made false reports to ACS and the Family Court are insufficient to plead that Defendant was engaged in state action. Plaintiff's Section 1983 claim against Defendant must therefore be dismissed because Defendant is a private party who was not acting under color of law. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[6]

---

[6] The procedural due process claim also fails for the additional reason that there are no allegations that Plaintiff lacked an opportunity to be heard at a meaningful time and in a meaningful manner. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner.").

**D.     State law claims**

A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of [supplemental] jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any remaining claims under state law that Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).[7]

## LEAVE TO AMEND

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects unless it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with an amendment, the Court declines to grant Plaintiff further leave to amend her complaint.

---

[7] Nothing in this order prevents Plaintiff from pursuing any state law claims in a state court of general jurisdiction.

**CONCLUSION**

The Court directs the Clerk of Court to strike the Second Amended Complaint (ECF 9), which was filed without leave of court. Plaintiff's claims under the False Claims Act are dismissed without prejudice. Plaintiff's claims under 42 U.S.C. § 1983 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff lacks standing to pursue criminal charges and these claims are also dismissed. The Court declines, under 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction of Plaintiff's state law claims.

The Court directs the Clerk of Court to enter judgment.

 SO ORDERED.

Dated:    July 14, 2025
          New York, New York

                                              _Louis L. Stanton_
                                              Louis L. Stanton
                                              U.S.D.J.